# LEE LITIGATION GROUP, PLLC
30 EAST 39TH STREET, SECOND FLOOR
NEW YORK, NY 10016
TEL: 212-465-1180
FAX: 212-465-1181
INFO@LEELITIGATION.COM

WRITER'S DIRECT:    212-465-1188
                    cklee@leelitigation.com

August 28, 2018

<u>Via ECF</u>

Hon. P. Kevin Castel, U.S.D.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *Armstead v. Starbucks Corporation*
               <u>Case No. 17-CV-1163 (PKC)</u>

Dear Judge Castel:

      We are counsel to Plaintiff in the above-captioned action. We write, jointly with counsel to Defendant, in response to the Court's August 8, 2018 Order (*see* Docket No. 43) to request that the Court approve the agreement enclosed herewith as Exhibit 1 ("Settlement Agreement") as fair and reasonable and dismiss Plaintiff's individual claims with prejudice.

**I.    PROCEDURAL HISTORY**

      On February 15, 2017, plaintiff Ebony Armstead ("Plaintiff") filed a complaint against defendant Starbucks Corporation ("Defendant") asserting claims under the Fair Labor Standards Act (29 U.S.C. § 201 *et seq.*) ("FLSA") and the New York Labor Law ("NYLL"). *See* Docket No. 1.

      Plaintiff worked for Defendant as a barista from May 18, 2015 until March 18, 2016. *See* Exhibit 2 at 1. In the Complaint, Plaintiff alleged that Defendant failed to pay her overtime compensation as required by the FLSA and NYLL. *See* Docket No. 11 at ¶¶ 24-26, 31-51. Specifically, Plaintiff claimed that that, throughout her 43 weeks of employment, she was required to work "from approximately 4:00 PM until 2:00 AM three days per week, and from approximately 4:00 PM until 12:30 AM two days per week for a total of approximately 44.5 hours per week" when 30 minute meal breaks are excluded. *See* Docket No. 1 at ¶ 24. She further alleged that, despite this schedule, she "was required by managerial employees to clock out at 11:30 PM each workday, and continue working off the clock until the end of each shift," resulting in "approximately 9.5 uncompensated hours each workweek." *See id.* at ¶ 25. In addition to her unpaid overtime claim, Plaintiff also alleged that because of Defendant's alleged "time shaving" practice, Defendant failed to provide her with proper wage statements. *See* Docket No. 11 at ¶¶ 31-51.

Hon. P. Kevin Castel, U.S.D.J.
August 28, 2018
Page 2

On June 23, 2017, Defendant moved to compel arbitration of Plaintiff's individual claims and to dismiss Plaintiff's class and collective action claims. *See* Docket Nos. 27-28. On November 17, 2017, this Court granted Defendant's motion to compel arbitration and denied its motion to partially dismiss the Complaint. *See* Docket No. 36.

Following the Court's November 17, 2017 order, the parties entered into settlement discussions. As part of these discussions, we provided detailed calculations regarding our assessment of Plaintiff's claims. *See, e.g.,* Exhibit 3. Defendant's counsel responded to these estimates, contending that: (1) certain aspects of our calculations were incorrect based upon the wage rates and hours assumptions used; and (2) plaintiff was not entitled to any recovery because her time records contradicted the allegations in her Complaint and demonstrated that there was "no systemic manipulation of plaintiff's time . . . ." *See* Ex. 2.

After further arm's-length negotiations between counsel, the parties reached a settlement in principle in April 2018 and executed the Settlement Agreement in July 2018. *See* Ex. 1 at 5. In the Settlement Agreement, Defendant agreed to pay Plaintiff a "Settlement Sum" of $10,000, with $5,000 to be distributed to Plaintiff (less applicable withholding and deductions) and $5,000 to be distributed to Plaintiff's counsel for attorney's fees and costs. *See* Ex. 1 at § 1.

## II.     STANDARD FOR APPROVAL

A settlement of FLSA claims must be "fair and reasonable." *Pinzon v. Jony Food Corp.*, No. 18-cv-105 (RA), 2018 WL 2371737, at *1 (S.D.N.Y. May 24, 2018) (internal quotation marks and citation omitted). It is the law of this Circuit that any resolution of FLSA claims must be approved by a court or the U.S. Department of Labor. *See, e.g., Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015).

"If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement." *Coleman v. DeFranco Pharmacy, Inc.*, No. 17 Civ. 8340 (HBP), 2018 WL 3650017, at *1 (S.D.N.Y. Aug. 1, 2018) (internal quotation marks and citation omitted). "Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (internal quotation marks and citation omitted).

Before approving an agreement, a court evaluates the "totality of [the] circumstances," including (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel, and (5) the possibility of fraud or collusion. *Hernandez v. Tabak*, No. 12 Civ. 1402(PKC), 2013 WL 1562803, at *1 (S.D.N.Y. Apr. 10, 2013).

Hon. P. Kevin Castel, U.S.D.J.
August 28, 2018
Page 3

### III. THE PARTIES' AGREEMENT IS FAIR AND REASONABLE AND SHOULD BE APPROVED.

#### A. The Payment to Plaintiff is Fair and Reasonable.

The Settlement Agreement required Defendant to pay a total Settlement Sum $10,000, of which $5,000 was paid directly to Plaintiff. Considering the totality of the circumstances, the $5,000 payment to Plaintiff is fair and reasonable and should be approved.

*First*, even if Plaintiff were to succeed in arbitration, her potential recovery is modest. Plaintiff alleges that she worked 9.5 uncompensated hours per week (4.5 uncompensated overtime hours per week), over a period of 43 weeks. For approximately 32 of those weeks, from approximately May 18, 2015 to December 31, 2015, Plaintiff received a regular hourly rate of $11/hour. For the remaining 11 of those weeks, from approximately January 1, 2016 to March 18, 2016, Plaintiff received a regular hourly rate of $11.35/hour. Accordingly, even accepting Plaintiff's allegations as true, she would be entitled at most to back pay of only about $5,603:

|  | **2015** | **2016** |
|---|---|---|
| **Alleged Unpaid Regular Rate** | $11/hour x 9.5 hours x 32 weeks = $3,344.00 | $11.35/hour x 9.5 hours x 11 weeks = $1,186.08 |
| **Alleged Unpaid Overtime Premium** | $5.5/hour x 4.5 hours x 32 weeks = $792.00 | $5.675/hour x 4.5 hours x 11 weeks = $280.91 |
| **Total:** | $4,136.00 | $1,466.99 |

The $5,000 paid to Plaintiff thus represents nearly 100 percent of Plaintiff's maximum potential recovery for unpaid wages based upon the allegations in her Complaint. This amount is both fair and reasonable, particularly in light of Defendant's position that Plaintiff was not entitled to any recovery.[1] *See, e.g., Pinzon*, 2018 WL 2371737, at *2-3 (settlement payment net of attorney's fees equal to less than 42% of recoverable back wages was fair and reasonable); *Penafiel v. Babad Mgmt. Co., LLC*, No. 17 Civ. 4629 (HBP), 2018 WL 1918613, at *2 (S.D.N.Y. Apr. 19, 2018) (net settlement amount equal to approximately 43% of alleged unpaid wages was reasonable where documentary evidence refuted plaintiff's claims).

---

[1] Although Plaintiff could potentially recover liquidated damages under either the FLSA or the NYLL (but not both) and statutory penalties based upon her NYLL claim, such damages are subject to good faith defenses and would require Plaintiff to establish her underlying claim. *See, e.g., Kereed v. W. 12th St. Rest. Grp. LLC*, No. 15-cv-1363 (PKC), 2016 WL 590233, at *6 (S.D.N.Y. Feb. 11, 2016). In light of Defendant's arguments that Plaintiff was not entitled to any recovery, the attendant risk of proving Plaintiff's claims, and the fact that Plaintiff's total recovery still would be only approximately $21,000 if she succeeded on all of these issues, *see* Ex. 2 at 1, Plaintiff's payment is both fair and reasonable. *See, e.g., Pinzon,* 2018 WL 2371737, at *2-3 (settlement amount net of attorneys' fees equal to less than 20 percent of total possible recovery, including liquidated damages and penalties, was reasonable).

Hon. P. Kevin Castel, U.S.D.J.
August 28, 2018
Page 4

*Second*, by settling when they did, before an arbitrator was selected and arbitration proceedings were commenced, both parties avoided the burden and costs (including attorneys' fees) associated with arbitration. It was therefore fair and reasonable for Plaintiff to accept a settlement payment lower than her maximum potential recovery. Likewise, Defendant avoided arbitration costs, justifying a settlement payment notwithstanding the strength of Defendant's case. *Cf. Pinzon*, 2018 WL 2371737, at *2-3 (payment to plaintiff—equal to less than 20 percent of possible recovery when attorney's fees were subtracted—was fair and reasonable, "particularly in light of the early procedural posture of the case").

*Third*, the settlement is fair and reasonable because it was not guaranteed that Plaintiff would prevail on her claims. Although Plaintiff alleged she was made to clock out at 11:30 PM and continue working until 12:30 AM or 2:00 AM (*see* Docket 1 at ¶ 25), Defendant revealed during settlement negotiations that Plaintiff' time records are inconsistent with these allegations. Specifically, Defendant's records reflect that (a) the majority of Plaintiff's shifts ended before 9:30 PM, and (b) when Plaintiff did work shifts extending beyond 11:00 PM, on 75 percent of such occasions she clocked out *after* 11:30 PM. *See* Ex. 2 at 1-2. Plaintiff thus faced the risk that the arbitrator would conclude that she was entitled to far less damages than she claimed (or no damages at all). *See, e.g., Gomez v. Bogopa Madison LLC*, No. 17-cv-5006 (RA), 2017 WL 6594226, at *2 (S.D.N.Y. Dec. 21, 2017) ($5,000 payment, inclusive of attorney's fees, was fair and reasonable where documentary evidence created risk of minimal recovery).

*Fourth*, the parties' experienced counsel engaged in several months of arm's-length negotiations before reaching settlement. The agreed upon Settlement Sum of $10,000 is nearly triple Defendant's initial offer of $3,500 (*see* Ex. 2 at 2) and was agreed to by Plaintiff only after she was confronted with time record evidence that placed her claims in serious doubt. Thus, the negotiating history of the parties supports approval of the settlement.[2]

*Fifth*, the parties did not engage in any fraud or collusion in reaching their agreement. To the contrary, the parties each compromised their starting positions based on an analysis of the

---

[2] The non-monetary terms of the Settlement Agreement also were the result of arms'-length negotiations between experienced counsel. The parties note that the Settlement Agreement contains a general release of claims by Plaintiff and a mutual agreement to keep the terms of the Settlement Agreement confidential. *See* Ex. 1 at ¶¶ 3.B, 4. While the parties are aware that some courts have declined to approve such provisions in the context of FLSA settlements, considering the totality of the circumstances, neither of these provisions should prevent approval of the Settlement Agreement in this case. With respect to Plaintiff's general release of claims, Plaintiff is unaware of any viable claim against Defendant that was not brought in this lawsuit. She was represented by competent counsel throughout the litigation and settlement negotiations, and she has no intent to assert any additional claims against Defendant. Indeed, Plaintiff's employment with Defendant ended nearly two and a half years ago, and thus many limitations periods applicable to Plaintiff's employment have expired or will be expiring soon. With respect to confidentiality, the obligations are mutual and reflect a belief by both parties that confidentiality is in their best interest. Further, in order to expedite the Court's review of the Settlement Agreement, the parties have waived the confidentiality provision in connection with these proceedings by filing the Settlement Agreement on the public docket.

Hon. P. Kevin Castel, U.S.D.J.
August 28, 2018
Page 5

evidence and an assessment of the risks and costs associated with further litigation. *See generally* Exs. 2 and 3.

Accordingly, the payment to Plaintiff should be approved.

### B. The Attorney's Fee to Plaintiff's Counsel is Reasonable.

"Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012) (citation omitted). "In an individual FLSA action where the parties settled on the fee through negotiation, there is a greater range of reasonableness for approving attorney's fees." *Mireku v. Red Vision Sys., Inc.*, No. 11 Civ. 9671(RA)(JLC), 2013 WL 6335978, at *1 (S.D.N.Y. Dec. 6, 2013) (internal quotation marks and citation omitted). Courts consider evidence providing a "factual basis for the award." *Id.* at *2 (citation omitted).

Plaintiff had agreed, upon retaining Plaintiff's counsel, that Plaintiff's counsel may receive a percentage of the full settlement amount negotiated or their lodestar. Given that Plaintiff is receiving nearly 100% recovery of the maximum amount of alleged damages and likely more than she would otherwise obtain, Plaintiff's counsel is entitled to receive their lodestar. Plaintiff's counsel's lodestar is greater than the amount being paid to Plaintiff's counsel under the Settlement Agreement. It is only due to Plaintiff's counsel's vigorous litigation and negotiation, that Plaintiff was able to obtain such a complete recovery. Pursuant to the settlement reached by the parties, Plaintiff's counsel is to receive $5,000.00 in legal fees and costs. Plaintiff's counsel had incurred costs of $496 in this matter ($400 filing fee and $96 process service fee).

Plaintiff's counsel invested significant time and resources into litigating this matter vigorously and are entitled to the fees sought in this case, which are less than Plaintiff's counsel's lodestar. Such work includes interviewing the Plaintiff, investigating the identity of Defendant, preparing a Complaint, preparing damages calculations, attending the Rule 26 call, analyzing and responding to Defendant's pre-motion letter regarding their motion to compel arbitration, preparing for and attending the initial conference, amending the Complaint, briefing Defendant's motion to dismiss and motion to stay proceedings and compel arbitration, negotiating with Defendant's counsel, correspondence with Defendant's counsel, correspondence with the Court, preparing and revising the settlement agreement and Stipulation of Dismissal, and preparing this submission.

It is Plaintiff's counsel's position that there is **no proportionality requirement** with regards to attorneys' fees, and Courts have frequently awarded legal fees based on counsel's lodestar at trial, even though the monetary recovery for plaintiffs was low, and where the lodestar dwarfed the amount that the jury awarded to the claimant. *See Wong v. Hunda Glass Corp.*, No. 09-cv-4402 (S.D.N.Y. June 23, 2010) (awarding the undersigned $100,100.00 as attorneys' fees when judgment awarded to plaintiff was only $36,953.52); *See also Chen v. Jin Holdings, et al*, No. 10-cv-0414 (SDNY January 31, 2012) (Dkt no. 21) (awarding the undersigned $68,131.14, as

attorneys' fees, when the judgment awarded to plaintiff was only $4,665.98, reasoning that "[s]ection 216(b) of the FLSA is designed in part to secure legal representation for those who have been injured, but for whom the monetary damages are too small to encourage a private attorney to take the case. In this particular case...plaintiff might well be without a remedy, if no 'reasonable fees' were permitted by statute.") *Id*. at 4.

Such reasoning directly applies to the instant matter where we negotiated a settlement for nearly the full maximum amount in backwages that Plaintiff could possibly recover at trial, and where Plaintiff's damages were a low amount compared to the lodestar that was necessary to achieve such recovery for Plaintiff. Moreover, in the same decision, the Honorable Paul A. Crotty, U.S.D.J. stated that "the Supreme Court has repeatedly recognized success in litigation as a critical factor in the reasonable fee which may be awarded. Hensley v. Eckerhart, 461 U.S. 424 (1983)." *Id*. at 4. While in *Hensley*, the plaintiff had only recovered a percentage of the original alleged damages, in this matter, Plaintiff is obtaining the best possible outcome on her backwages.

In a similar matter, *Lugo v. HTCT, LLC, et al,* No. 17-cv-2725 (SDNY May 1, 2018) (Dkt no. 34), this Court had approved and entered a Rule 68 Offer of Judgment, which provided a disproportionate amount in legal fees based on counsel's lodestar, because plaintiff was receiving 100% of his backwages.

### IV. CONCLUSION

Considering the totality of the circumstances, the Settlement Agreement, including the amount of legal fees sought, is fair and reasonable. The parties therefore respectfully request that it be approved and that Plaintiff's claims be dismissed in their entirety and with prejudice.

Respectfully submitted,

*/s/ C.K. Lee*
C.K. Lee, Esq.

cc: All counsel via ECF